IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES M. TRAINOR, | ) | |
| | ) | |
| Plaintiff | ) | Case No. 1:20-cv-00225-RAL |
| | ) | |
| vs. | ) | |
| | ) | THE HON. RICHARD A. LANZILLO |
| WELLPATH, et al., | ) | UNITED STATES MAGISTRATE JUDGE |
| | ) | |
| | ) | MEMORANDUM OPINION ON |
| Defendants | ) | CORRECTIONS DEFENDANTS' |
| | ) | MOTION TO DISMISS FOR FAILURE |
| | ) | TO STATE A CLAIM (ECF NO. 25) |

I.      Procedural History

Plaintiff James M. Trainor, an inmate in the custody of the Pennsylvania Department of Corrections (DOC) at its Forest County State Correctional Institution (SCI-Forest), brings this federal civil rights and state law negligence action against several DOC staff personnel and outside medical personnel whom he alleges failed to provide him with necessary and appropriate medical care. ECF No. 1. His Complaint asserts three counts, each against all Defendants in their individual capacities. ECF No. 1, ¶ 9. Count I asserts a claim pursuant to 42 U.S.C. § 1983 alleging that all Defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. Count II alleges a state law medical negligence claim against all Defendants. Count III alleges intentional and negligent infliction of emotional distress claims against all Defendants. *Id.*, ¶¶ 121–23.

Seven Defendants, Registered Nurse Supervisor (RNS) Jamie Ferdarko, RNS Gary Prinkey, Chief Healthcare Administrator (CHCA) Kim Smith, Certified Registered Nurse Practitioner (CRNP) Sandy Rogers, CRNP Brenda Hartzell, Unit Manager Best, and C. Hays—the Director of the Activities Department at SCI-Forest (collectively the "Corrections Defendants"), filed a motion

to dismiss the Complaint for failure to state a claim against them pursuant to Fed. R. Civ. P. 12(b)(6).[1]  ECF Nos. 25, 26.  After Trainor failed to respond to the motion to dismiss, the Court ordered that he file a response within twenty-one days.  ECF No. 31, p. 1.  When Trainor allowed this and an additional grace period to pass without filing a response, the Court ordered Trainor to show cause for his failure to respond or submit a brief in opposition by June 28, 2021.  ECF No. 33. The Court added that, "Plaintiff's failure to file an explanation for his noncompliance or, in the alternative, a brief in opposition to the Motion to Dismiss may result in the dismissal of the Plaintiff's case for failure to prosecute or the Court's deciding of the Motion to Dismiss without any response from Plaintiff."  Id.  Despite the Court's directives and warnings, Trainor still has not filed a response to the pending motion or attempted to explain his non-compliance.  Accordingly, the Court will now decide the motion without the benefit of any response from Trainor.

II.    Factual Allegations

The Court accepts the following factual allegations in Trainor's Complaint as true for purposes of Defendants' motion to dismiss.  See US Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).  The facts are drawn from Trainor's Complaint and its attached exhibits as the Court "must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010); see also Levins v. Healthcare Revenue Recovery Grp. LLC, 902 F.3d 274, 279 (3d Cir. 2018).

In 2006, Trainor suffered a spinal cord injury.  ECF No. 1, ¶ 10.  This paralyzed him from the chest down.  Id.  Doctors advised that he might never walk again.  Id., ¶ 11.  From 2006 to 2015,

---

[1] The remaining Defendants, Certified Registered Nurse Practitioner (CRNP) Andrew Leslie, Lisa Lamoreaux, Dr. Robert Maxa, CRNP Max Sutherland, Correct Care Solutions, LLC, and Wellpath, LLC (collectively the "Medical Defendants") filed an answer to the Complaint with affirmative defenses.  ECF No. 22.

he underwent a spinal surgery and three leg surgeries.  *Id.*, ¶¶ 12, 15.  After nine years of therapy and medication, he regained the ability to walk.  *Id.*, ¶ 17.  In October 2014, his doctor told him to perform multiple exercises to maintain mobility in his legs, including leg extensions, reverse leg curls, riding a stationary bike, and using an elliptical.  *Id.*, ¶¶ 19–21.

Trainor was arrested in January of 2016 and housed at the Beaver County Prison in Aliquippa, Pennsylvania.  *Id.*, ¶¶ 22-23.  Prior to his arrest, he regularly used a walker.  *Id.*, ¶ 22.  Dr. Frederick Florian, his long-time primary care physician, requested that prison staff provide Trainor double portions of meals because he needed a higher calorie and protein intake to maintain his muscle mass and lower extremity strength.  *Id.*, ¶¶ 24–26; ECF Nos. 1-1, 1-2.  Dr. Bonitatibus, employed by Southern Health Partners, Inc. at Beaver County Prison, ordered him a double mattress for back support.  *Id.*, ¶¶ 28-29.  While at Beaver County Prison, staff provided Trainor double trays at meals and a double mattress.  *Id.*, ¶ 30.

Trainor was transferred to SCI-Forest in January 2017.  *Id.*, ¶ 31.  On February 15, 2017, Correct Care Solutions provided Trainer with a walker with wheels.  *Id.*, ¶ 32.  Eight months later, on October 19, 2017, Trainor met with Zappa, a DOC physical therapist who is not a Defendant in this action.  *Id.*, ¶¶ 34.  The Complaint describes him as "the expert Physical Therapist who the D.O.C. utilizes to provide advice about facility exercise equipment and authorization for therapy plans for qualifying inmates."  *Id.*, ¶ 33.  Trainor told him that his leg strength and mobility are daily struggles and that sometimes he wakes up with muscle spasms which prevent him from walking.  *Id.*, ¶ 34.  Zappa and Trainor discussed in-cell and out-of-cell exercises Trainor could do as physical therapy.  *Id.*, ¶ 35.  The Complaint says that Zappa ordered that Trainor be given 3–5 days a week of physical therapy, but does not specify to whom, if anyone other than Trainor, Zappa told this.  *Id.*, ¶ 35.

3

Trainor was not enrolled in a formal physical therapy program. All the Medical Defendants told him that to access the weight resistance exercises, he needed to sign up for the gym like other inmates. *Id.*, ¶ 37. A scheduling conflict arose when Trainor sought to use the gym at a time overlapping with the time to receive medication in the "med-pass" line. *Id.*, ¶¶ 38-39; ECF Nos. 1-5, 1-6. Hummel, working in the Activities Department, told him to sign up and come to activities "on your own for therapy." ECF No. 1, ¶ 43. CHCA Kim Smith responded to two inmate request slips Trainor sent her in October of 2017, saying that prison personnel would not move his med-pass time. When Trainor was not placed on the callout list for the gym on October 17, 2017, he sent a request slip to Gibby, Hays, Howard, Humel, Fiscus, and Courter about getting back on the list for gym callouts for his "side circuit training." ECF No. 1-7. Hays responded that he was taken off the list for gym access because of two absences from scheduled gym time. *Id.* Hays placed him on the waitlist which he updates at the end of the month. Hummel added, "circuit training does not mean you come ride a bike. Join a weight room for that." *Id.*

Trainor failed to comply with the rule that he stand count (because he was physically unable to stand), and staff placed him on a cell restriction on November 15 and 16, 2017. ECF No. 1, ¶ 51. Consequently, staff removed him from the gym list. *Id.*, ¶ 52. On November 16, 2017, Trainor sent a request slip to Hays stating that he had met with unnamed medical staff that day and they ordered that he have eight callouts per week to the weight room. ECF No. 1-8. Hays replied about two weeks later that she had a conversation with unnamed medical staff who said he was "not to be given special treatment. You apply for programming just like everyone else. We are not a physical therapy department. You have been given things to do on your own." *Id.* On December 28, 2017, Trainor sent a request slip to the prison superintendent requesting more gym time per week. In response to this request, CHCA Smith replied, "Inmate Trainor is <u>not</u> on a physical therapy program. Mr. Zappa is not a Dr. He provides guidance and instruction on what exercises can be

4

done to improve condition or lessen symptoms.  Medical is not ordering or approving anything additional from gym activity that would not be routinely available to him.  He needs to follow gym rules." ECF No. 1-9 (emphasis in original).

In late October 2017, Trainor fell by accident.  ECF No. 1, ¶ 46.  He had no walker or wheelchair then.  Lt. Dietrick assisted him to the Medical Department where he was treated. Medical then returned his walker.  *Id.*, ¶ 47.  In November 2017, Trainor received a misconduct for violating the "ground-level restriction."  ECF No. 1, ¶ 48.  Ferdarko explained that this was because his "medical status" placed him in "grave danger by climbing and descending the flight of stairs." *Id.*, ¶ 49.

Trainor also asserts a claim based on the refusal of staff to provide him a double mattress. On March 2, 2018, Trainor asked Unit Manager Best for a double mattress, which is thicker than a standard mattress.  ECF No. 1, ¶ 58.  Best told him that there was no record from the Medical Department that he was ordered one, and he told him to fill out a sick call slip because that is the Medical Department's responsibility.  *Id.*, ¶ 59; ECF No. 1-10.  Medical Department staff Tammy, Brad, Brown, Sutherland, and Thompson referred him to nurse supervisor Ferdarko.  *Id.*, ¶ 60.  In response to a request slip Trainor sent Ferdarko, Lisa Lamoreaux wrote that the Medical Department does not order mattresses.  ECF No. 1-11.  Replying to a request slip a week and a half later, Ferdarko said, "Medical doesn't get involved in mattresses."  ECF No. 1, ¶ 62; ECF No. 1-12. However, the Complaint says that CRNP Sutherland showed him in April of 2018 a place in the computer prison medical records where medical personnel can record an inmate's need for a double mattress.  ECF No. 1, ¶ 63.  Sutherland told him that unnamed superiors instructed all medical staff not to assign inmates double mattresses "because they would be overrun with liability."  *Id.*, ¶ 64.

Trainor was issued a permanent walker again on May 4, 2018. *Id.*, ¶ 65; ECF No. 1-13. In December 2018, he grieved that staff took the walker or wheelchair from him (the complaint and attached records are inconsistent). ECF No. 1-14. This occurred because the unnamed "provider" viewed video of him doing leg presses which Ferdarko "falsely claimed" was 400 lbs, and staff also viewed him walking without difficulty. *Id.*; ECF No. 1, ¶ 67. Responding to another grievance about his requested accommodations, CHCA Smith wrote on April 23, 2019, "He does not require a walker or a wheelchair. He has made no complaint to medical about mobility concerns since December. The[re] is no indication he needs different meal times or needs a handicap table pass. There is no indication he needs specialized times for med line. The last time he saw PT was in Jan[uary] 2018 and he was discontinued from services at that time. The recommendation was to discontinue the walker and he was instructed on strengthening and stretching exercises to do on his own. There is no indication he needs a handicap shower. His only restriction is bottom bunk and bottom tier so he should not be on the stairs. He does not need to be seen by a Dr. as all his complaints all have been previously addressed…. He needs no further medical restrictions or accommodations at this time. Medical is on the same page concerning this." ECF No. 1-14. On April 10, 2019, Trainor requested priority to use only the handicap stall for showers. ECF No. 1-15. Best responded, "Noted. You are not listed as handicapped." *Id.*

Trainor has spent about two years of his incarceration in the Restricted Housing Unit (RHU). ECF No. 1, ¶ 72. Each time he was taken to the RHU, if he had a walker or wheelchair, it was confiscated by unnamed personnel. *Id.* He was never permitted to have his walker while in the RHU. *Id.* Trainor repeatedly sought to get a wheelchair or walker back, writing to the Medical Department, the Program Review Committee (PRC), and the Security Department. *Id.*, ¶ 73.

On May 18, 2019, he began experiencing severe leg and lower back spasms and pain in his neck which made him unable to stand without holding onto cabinets or shelves.  *Id.*, ¶ 74.  He reported this to unnamed nurses who told him to put in a sick call.  *Id.*, ¶ 75.  He submitted a sick call the next day but was not seen by medical staff.  *Id.*, ¶ 76.  CHCA Smith and Ferdarko deemed his complaints "frivolous," "non-emergent," and "non-chronic."  *Id.*, ¶ 78.  Sutherland refused to reorder a walker for Trainor on July 1, 2019.  *Id.*, ¶ 81.  CHCA Smith again told him on July 15, 2019, that he "is not on a therapy regimen or program."  *Id.*, ¶ 82.

Trainor's "medical condition progressively worsened."  *Id.*, ¶ 83.  During the late months of 2019, he lost muscle mass and about thirty pounds.  *Id.*, ¶¶ 83, 86.  His "muscle spasms increased with frequency and [his] pain intensified."  *Id.*, ¶ 83.  He experienced difficulty and pain walking to his cell door to receive his medication and food.  *Id.*, ¶ 84.  He missed about forty meals in the second half of 2019 due to walking issues.  *Id.*, ¶ 85.  Still, on August 7, 2019, Ferdarko wrote in response to a request by Trainor that he not be held in the RHU that, "It is the opinion of the medical professionals here that you are not disabled."  *Id.*, ¶ 88; ECF No. 1-16.

Trainor fell and broke his left foot on August 14, 2019.  *Id.*, ¶ 89.  He believes this occurred because his legs became weaker after Defendants denied him the medical care he sought.  *Id.*  That day, he told Brenda Hartzell about his foot, and she said, "looks bad, I'll contact triage."  *Id.*, ¶ 90. He also submitted a sick call.  *Id.*, ¶ 91.  He "repeatedly reported his broken foot" during med-pass, and CRNP Sandy Rogers "repeatedly informed" him that "it looks bad, triage was notified."  *Id.*, ¶ 92.  He submitted another sick call slip on September 1, 2019.  *Id.*, ¶ 93.  He spoke with CRNP Sutherland on September 4, 2019, who responded that he would have Medical see him.  *Id.*, ¶ 94. Trainor submitted another sick call, his third about his foot.  *Id.*, ¶ 95.  It was not until September 16, 2019, that Sutherland ordered an x-ray.  *Id.*, ¶ 96.  The x-ray taken on September 17,

2019, showed that Trainor had a fracture in his left foot.  *Id.*, ¶ 97.  From August 14 to September 17, Trainor received no medication or assistance for his foot.  *Id.*, ¶ 98.  CHCA Smith denied a grievance about this lack of treatment as "frivolous."  *Id.*, ¶ 99.  Trainor also fell as he attempted to get out of bed on October 31, 2019, and suffered a fracture in his right foot, which was confirmed by an x-ray.  *Id.*, ¶ 100-01.  Trainor was not given ice, increased pain medication, a walker, bandages, a cast, or any other treatment for either incident of injury to his feet.  *Id.*, ¶ 102.

When Trainor was released from the RHU on December 26, 2019, staff gave him a wheelchair.  *Id.*, ¶ 103.  A month later, security issued him a misconduct for diverting his pain medication (Neurotin) into a cup.  *Id.*, ¶ 104.  Wellpath staff and other medical personnel discontinued his pain medication the next day.  *Id.*, ¶ 105.  But in late January, the Hearing Examiner found him not guilty of the misconduct, so he told medical staff.  *Id.*, ¶¶ 106-07.  CRNP Sutherland replied that he would not get his pain medication back.  *Id.*  The Complaint does not explain why CRNP Sutherland said this.  Trainor has not received pain medication again since he filed his complaint.  *Id.*, ¶ 116.  Trainor alleges that no doctor has seen him during his incarceration, *id.*, ¶ 109, SCI-Forest does "not have an adequate therapy room for" his needs, *id.*, ¶ 118, and the inadequate medical system worsened his medical condition.  *Id.*

Trainor fears losing his legs and ability to walk.  *Id.*, ¶ 119.  Trainor's left leg has developed severe visual dark-red scarring.  *Id.*, ¶ 120.  His entire left foot and lower leg are numb.  *Id.*  He experiences severe and incapacitating pain daily.  He has also suffered substantial mental anguish and emotional distress.  *Id.*, ¶ 119.  Unnamed people "constant[ly]" ridiculed Trainor's pain and difficulty walking.  *Id.*, ¶ 113.

III.    Standard of Review

A.  Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  A complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955 (rejecting the traditional Rule 12 (b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).  In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955.  A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)).  Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts in the complaint.  *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the Court accept legal conclusions disguised as factual allegations. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. *See also*

*McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly*/*Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937.

### B.  *Pro Se* Litigants

While the foregoing principles apply to all complaints in federal court, *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520-521, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972).  If the court can reasonably read a *pro se* complaint to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements.  *Boag v. MacDougall*, 454 U.S. 364, 102 S. Ct. 700, 70 L. Ed. 2d 551 (1982); *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

IV.    Discussion

    A.  Defendants' Statute of Limitations Defense is Premature Because the Record Does Not Disclose the Extent to Which the Limitations Period May Have Been Tolled During the Grievance Process.

The Defendants argue that the statute of limitations bars certain of Trainor's claims because he filed his Complaint more than two years after the accrual of these claims.  ECF No. 26, pp. 3–5. The running of the statute of limitations is an affirmative defense.  *See* Fed. R. Civ. P. 8(c)(1); *Bradford-White Corp. v. Ernst & Whinney*, 872 F.2d 1153, 1161 (3d Cir. 1989).  When raised on a motion to dismiss, "[a] complaint is subject to dismissal on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint."  *Williams v. Correct Care Solutions*, 2017 WL 3401455, at *4 (M.D. Pa. Aug. 8, 2017) (citing *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)).  Claims brought pursuant to 42 U.S.C. § 1983 are subject to the most analogous state statute of limitations, which, in Pennsylvania, is the two-year statute of limitations for personal injury actions.  *See Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985); *Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 457 n. 9 (3d Cir. 1996) (citing 42 Pa. C.S. § 5524).  *See also Wallace v. Kato*, 549 U.S. 384 (2007) (for § 1983 claims, "the length of the statute of limitations…is that which the State provides for personal-injury torts.") (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989) (in each state, § 1983 claims are governed by the state's "general or residual statute for personal injury actions")).  A cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action.  *Sameric Corp. of Delaware. Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998); *see also Nelson v. County of Allegheny*, 60 F.3d 1010 (3d Cir. 1995).  "The determination of the time at which a claim accrues is an objective inquiry," concerned with "what a reasonable person should have known."  *Kach v. Hose*, 589 F.3d 626, 634 (3d

Cir. 2009).  According to the prison mailbox rule, the Court treats the filing of Trainor's complaint as August 3, 2020—when he dated his complaint.[2]   ECF No. 1, p. 10.

This does not end the inquiry, however.  The statute of limitations for § 1983 actions is tolled while the prisoner exhausts the administrative remedies available to him because such exhaustion is mandatory under the Prison Litigation Reform Act.  *Wisniewski v. Fisher*, 857 F.3d 152, 158 (3d Cir. 2017) (citing *Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 603 (3d Cir. 2015)).  A plaintiff is not deemed to have exhausted his administrative remedies until a final appeal decision on his grievance.  *See Fennell v. Cambria Cty. Prison*, 607 Fed. Appx. 145, 149 (3d Cir. 2015) ("proper exhaustion" means a prisoner's completion of the administrative review process).

Trainor's Complaint shows that certain of the allegedly tortious conduct upon which he bases his claims occurred more than two years before he commenced this action.  For example, in October 2017, several Defendants allegedly refused to move his time to get medicines in the med-pass line thereby causing him to miss physical therapy time in the prison gym.  ECF No. 1, ¶¶ 37–42.  Trainor "filed several grievances and requests seeking to rectify the conflict."  *Id.*, ¶ 39.  He also attached a portion of a different grievance record from April 2019 to his Complaint.  ECF No. 1-14 (Exhibit N).  The Complaint and its exhibits do not disclose whether Trainor grieved the conduct that occurred more than two years before the filing of this action or that grievances remained pending within the limitations period.  Thus, the statute of limitations defense is not apparent on the face of the Complaint.  *See Wisniewski v. Fisher*, 857 F.3d at 158 (rejecting statute of limitations defense on a 12(b)(6) motion because prisoner plaintiff alleged that he grieved tortious conduct covered in his complaint).  *See also Thompson v. Pitkins*, 514 Fed. Appx. 88, 90 (3d Cir. 2013).

---

[2] Pennsylvania applies the prison mailbox rule, which provides that the "date of delivery of [the pleading] by the [inmate] to the proper prison authority or to a prison mailbox is considered the date of filing of the [pleading]."  *Galtoghab v. Doe*, 2016 WL 757739, at *3 (W.D. Pa. 2016) (quoting *Commonwealth v. Little*, 716 A.2d 1287 (Pa. Super. Ct. 1998)).

Whether the Defendants possess a meritorious statute of limitations defense must await development of the proper record.

### B. Personal Involvement

Each of the three counts of Trainor's Complaint is asserted against all Defendants in their individual capacities, often without specifying which Defendant or Defendants committed the actionable conduct upon which the claim is based. ECF No. 1, ¶¶ 9, 121–23. Based on this ambiguity, the Corrections Defendants argue that the claims against Ferdarko, Prinkey, Smith, and Best under § 1983 must be dismissed because Trainor's allegations do not support their personal involvement in any actionable conduct. ECF No. 26, p. 7. The Corrections Defendants do not contest the sufficiency of the Complaint to support the personal involvement of Sandy Rogers, Brenda Hartzell, and C. Hays.

A defendant in a § 1983 action "must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."[3] *Saisi v. Murray*, 822 Fed. Appx. 47, 48 (3d Cir. 2020) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (citations removed). It is the plaintiff's burden to "show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. Sept. 14, 2006) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006)). Allegations that broadly implicate multiple defendants without delineating individual conduct are legally insufficient. *See Van Tassel v. Piccione*, 608 Fed. Appx. 66, 69-70 (3d Cir. 2015).

---

[3] 42 U.S.C. § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

With these principles in mind, the Court will examine the specific factual allegations against Corrections Defendants Ferdarko, Prinkey, Smith, and Best to determine the extent to which each had personal involvement in the conduct alleged in the Complaint. Then the Court will consider whether the conduct of each of these Defendants is actionable under § 1983.

As noted above, Ferdarko is a Registered Nurse Supervisor. The Complaint alleges that a corrections officer consulted with Ferdarko before he issued a misconduct against Trainor for violating a "ground-level restriction" in November of 2017. This restriction limited Trainor's use of stairs and was imposed based on safety concerns. ECF No 1, ¶¶ 48-49. Trainor apparently included this allegation in the Complaint to show that Ferdarko was aware of his physical limitations and restrictions. Ferdarko was also one of the individuals to whom Trainor directed a request form for issuance of a double mattress. *Id.*, ¶¶ 60-61. Consistent with responses sent by others to similar requests, Ferdarko responded, "Medical doesn't get involved in mattresses." *Id.*, ¶ 62. Trainor further alleged that Ferdarko viewed video of him exercising in December of 2018 and, according to Ferdarko, using 400 lbs. on the leg press. *Id.*, ¶¶ 65–67. ECF Nos. 1-13, 1-14. After Trainor complained of severe leg and lower back muscle spasms and pain on May 18, 2019, Ferdarko and CHCA Smith dismissed his complaints about his medical care as "frivolous," "non-emergent," and "nonchronic." *Id.*, ¶¶ 74-76, 78. Finally, in response to a request by Trainor that he not be held in the RHU because of his disability, Ferdarko wrote on August 7, 2019, "It is the opinion of the medical professionals here that you are not disabled." *Id.*, ¶¶ 83–85, 88. ECF No. 1-16.

The Complaint names Prinkey as a Defendant and identifies him as a Registered Nurse Supervisor, but it includes no factual allegations against him.

Smith is the Chief Healthcare Administrator at SCI-Forest. The facts alleged in the Complaint support that she acted primarily as a conduit for information between Trainor and

14

members of the Medical Department staff.  This included advising Trainor of Medical Department decisions with which he disagreed, including the decision not to move his time for the medication line so he could have his preferred time in the gym [ECF No. 1, ¶¶ 37–43; ECF No. 1-7]; the requirement that he abide by gym rules or forgo attendance; the information that he was not on a formal physical therapy program; information that Zappa was not a doctor and unable to prescribe a physical therapy program [ECF No. 1, ¶¶ 51-52; ECF No. 1-9]; staff members' assessment that his complaints about pain in his back, legs, and neck on May 18, 2019 were "frivolous" [ECF No. 1, ¶¶ 74–78]; and information that he is "not on a therapy regimen or program."  *Id.*, ¶ 82.  Significantly, Trainor does not allege facts to support that CHCA Smith participated in or interfered with his medical treatment.

Best is a Unit Manager at SCI-Forest and not a member of the medical staff.  The Complaint does not allege that he had any responsibility for Trainor's medical care.  On March 2, 2018, Trainor asked Best for a double mattress.  *Id.*, ¶ 58.  Best told him that there was no record from the Medical Department that he was ordered one, and he told him to fill out a sick call slip because that is the Medical Department's responsibility.  *Id.*, ¶ 59; ECF No. 1-10.  On April 10, 2019, Trainor requested priority to use only the handicap stall for showers.  ECF No. 1-15.  Best responded that "Noted. You are not listed as handicapped."  *Id.*

Having identified the conduct of each of the foregoing Defendants alleged in the Complaint, the next task is to determine whether that conduct supports a viable § 1983 claim.  As a threshold matter, the Court notes that the mere fact that Ferdarko, Prinkey, Smith, and Best were "supervisors" or had supervisory authority, standing alone, is not sufficient to support liability under § 1983.  *Hepler v. Wetzel*, 2019 WL 1923004, at *5 (W.D. Pa. Apr. 30, 2019) (citing *Capone v. Marinelli*, 868 F.2d 102, 106 n. 7 (3d Cir. 1989)).  This is because "[l]iability may not be imposed under § 1983

on the traditional standards of *respondeat superior.*" *Id.* Thus, Ferdarko, Prinkey, Smith, and Best cannot be held liable under a *respondeat superior* theory. But "two theories of supervisory liability" are available under § 1983 upon a proper showing of additional facts. *Santiago v. Warminster Tp.*, 629 F.3d 121, 129 n. 5 (3d Cir. 2010). Under one, "supervisors can be liable if they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). The Complaint does not allege that Ferarko, Pinkey, Smith, or Best had a policy, practice, or custom of denying medical care in violation of the Eighth Amendment, so that theory of personal involvement does not support a claim against them. Under the other theory, a supervisor may be held liable when "he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Id.* (quoting *A.M.*, 372 F.3d at 586). Furthermore, although a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986); *Brown v. Grabowski*, 922 F.2d 1097, 1120 (3d Cir. 1990). Trainor's Complaint fails to allege facts to support any form of supervisory liability against Ferdarko, Prinkey, Smith, and Best.

The Corrections Defendants also argue that the Complaint does not support the personal involvement of Ferdarko, Prinkey, Smith, and Best because the § 1983 claim against them is for "responding to Plaintiff's complaints and grievances." ECF No. 26, p. 7. The Corrections Defendants are correct that "the filing of a grievance is not sufficient to show the actual knowledge necessary for a defendant to be found personally involved in the alleged unlawful conduct." *Mearin v. Swartz*, 951 F. Supp. 2d 776, 782 (W.D. Pa. 2013). *See also Stuart v. Lisiak*, 645 Fed. Appx. 197, 200 (3d Cir. 2016) (holding that a prison nurse lacked personal involvement when she declined to

intervene in an inmate's treatment, despite receiving the inmate's grievance claiming that the treatment was deficient); *Mincy v. Chmielewski*, 508 Fed. Appx. 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement.").  Courts have routinely dismissed civil rights claims under § 1983 against prison officials whose only knowledge of the alleged violation stemmed from their participation in the grievance process.  *See, e.g., Hoopsick v. Oberlander*, 2020 WL 5798044, at *2 (W.D. Pa. Sept. 29, 2020) (defendant upholding denial of plaintiff's grievance); *Beale v. Wetzel*, 2015 WL 2449622, at *5 (W.D. Pa. May 21, 2015) (senior prison officials' participation in administrative appeal process); *Mearin*, 951 F. Supp. 2d at 782 (same); *Rogers v. United States*, 696 F. Supp. 2d 472, 488 (W.D. Pa. 2010) (no personal involvement under § 1983 "[i]f a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred.").  Likewise, in this case, Trainor's claims against Ferdarko, Prinkey, Smith, and Best fail to the extent they are based on the involvement of these Defendants in the grievance process.[4]

---

[4] But the Corrections Defendants' assertion that this principle extends beyond "participation in the inmate grievance system" to "otherwise responding to [Trainor's] complaints" goes too far if they mean that prison officials can never be personally liable based on their response to information received in a prisoner's request slips or verbal or written complaints.  ECF No. 26, p. 7.  On the one hand, a request slip received by a corrections officer that only provides after-the-fact notice of some alleged civil rights violation does not show the recipient's personal involvement in the prior violation.  *See Enlow v. Beard*, 2013 WL 5332139, at *5 (W.D. Pa. Sept. 23, 2013) ("Plaintiff has not shown personal involvement on the part of the Defendants to whom he allegedly sent inmate request slips informing them of the inappropriate bunk transfer."); *Hill v. Fisher*, 2010 WL 6004059, at *9, (M.D. Pa. Nov. 10, 2010) (dismissing retaliation claim because "submitting a grievance or request slip about a discrete incident that has already happened does not raise a reasonable inference of personal involvement on the part of the defendant to whom the grievance or request slip is submitted."); *McGinnis v. Hammer*, 2017 WL 4286420, at *13 n. 7 (W.D. Pa. July 27, 2017).  On the other hand, a corrections officer's receipt of a request slip that raises an objectively serious threat of harm or an ongoing harm to the inmate may establish the recipient's personal involvement in a constitutional violation where the officer fails to act in response to that notice.  *Compare Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001) (the prison official "must actually have known or been aware of the excessive risk to inmate safety.") *with Walker v. Glunt*, 654 Fed. Appx. 531, 533 (3d Cir. 2016) (affirming summary judgment for defendant on Eighth Amendment failure to protect claim when he received request slip *after* the inmate-on-inmate attack) *and Rieco v. Moran*, 633 Fed. Appx. 76, 80 (3d Cir. 2015) (request slip sent to defendant corrections officer captain *after* Eighth Amendment claim of food tampering insufficient to establish personal involvement).

The Court will next assess whether the remaining alleged conduct of each Corrections Defendant supports an Eighth Amendment claim. This requires examination of the substantive elements of the claim.

Trainor asserts that the Defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment by showing deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97 (1976) ("deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment") (internal quotation omitted). To plead a violation of his constitutional right to adequate medical care, a plaintiff must allege facts that demonstrate: (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A medical need is considered "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Monmouth Cty. Corr. Instit. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Deliberate indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990). This is not an objective test of intent; instead, deliberate indifference means that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

18

It is well-settled that "an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim." *Tillery v. Noel*, 2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018) (collecting cases). Such complaints fail to state constitutional claims because "the exercise by a doctor of his professional judgment is never deliberate indifference." *Gindraw v. Dendler*, 967 F. Supp. 833, 836 (E.D. Pa. 1997) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.")). "Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983." *Tillery*, 2018 WL 3521212, at *5 (citing *Gause v. Diguglielmo*, 339 Fed. Appx. 132 (3d Cir. 2009) (characterizing a dispute over pain medication as the type of "disagreement over the exact contours of [plaintiff's] medical treatment" that does not violate the constitution)).

Similarly, "the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation." *Tillery*, 2018 WL 3521212, at *5 (quoting *Estelle*, 429 U.S. at 106). "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67 (citations omitted). Thus, "courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care." *Hensley v. Collins*, 2018 WL 4233021, at *3 (W.D. Pa. Aug. 15, 2018) (quoting *Clark v. Doe*, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000)). *See also Wisniewski v. Frommer*, 751 Fed. Appx. 192, 195-96 (3d Cir. Oct. 3, 2018) (noting that "there is a critical distinction 'between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment.'") (quoting *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017)).

That said, as the Court of Appeals has made clear, the fact that prison medical personnel have provided some medical care to an inmate does not preclude a finding of deliberate indifference:

> [T]here are circumstances in which some care is provided yet it is insufficient to satisfy constitutional requirements. For instance, prison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for "an easier and less efficacious treatment" of the inmate's condition. *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978) (quoting *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974)). Nor may "prison authorities deny reasonable requests for medical treatment…[when] such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury.'" *Monmouth County Corr. Inst. Inmates*, 834 F.2d at 346 (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976)).

*Palakovic v. Wetzel*, 854 F.3d 209, 228 (3d Cir. 2017).

Regarding Corrections Healthcare Administrator Kim Smith, the Corrections Defendants correctly argue that she cannot be considered to have been personally involved in the neglect of Trainor's serious medical need because she is not a "medical provider."  ECF No. 26, p. 8.  The problem with holding Smith liable for deliberate indifference to Trainor's medical need lies in the subjective element of an Eighth Amendment claim.  "CHCAs are 'undisputably administrators, [and] not doctors.'"  *Williams v. Pa. Dep't of Corrs.*, 2013 WL 3209283, at *4 (quoting *Thomas v. Dragovich*, 142 Fed. Appx. 33, 39 (3d Cir. 2005)).  Smith is "non-medical prison personnel in the sense that [she is] not responsible for directly rendering medical care."[5]  *Id.*  "As a general rule, non-medical prison officials are not deliberately indifferent under the Eighth Amendment simply because they failed to

---

[5] Corrections Defendants also assert that nurse supervisors are considered "non-medical personnel."  *See* ECF No. 26, p. 8 (citing *Dunyan v. Pa. Dep't of Corrs.*, 2017 WL 3509243, at *7 (M.D. Pa. Aug. 16, 2017) (for "a denial of medical care claim under Section 1983, correctional health care administrators and nurse supervisors are generally considered nonmedical personnel").  This assertion takes case law out of context.  In *Dunyan*, the basis for dismissal was that the plaintiff was under the care of a doctor and there was no allegation that the defendant had "reason to believe (or actual knowledge) that prison doctors or their assistants [were] mistreating (or not treating) a prisoner."  *Id.* (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)).  The proposition that nurse supervisors are categorically to be considered "nonmedical personnel" goes too far.

respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor or because they deferred to the judgment of the medical staff treating the inmate." *Dunyan*, 2017 WL 3509243, at *7 (citing *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993). *See also Judge v. Med. Dep't at S.C.I. Greene*, 2007 WL 1576400, at *4 (W.D. Pa. May 31, 2007) ("The rule is that where a prisoner is being treated by a physician, a non-physician prison administrator cannot be deemed deliberately indifferent simply because the lay administrator did not challenge the physician's care or respond directly to a prisoner's requests for more or different treatment.") (citing authority).  "To state an Eighth Amendment claim of deliberate indifference against" a corrections healthcare administrator, Trainor must show that she "possessed actual knowledge or a reason to believe that 'prison doctors or their assistants [were] mistreating (or not treating)' him." *Id.* (quoting *Spruill*, 372 F.3d at 326).  The facts alleged in Trainor's Complaint do not support such an inference against Smith.

This Court has ruled before that a Pennsylvania prison's "Chief Healthcare Administrator …was not in a position to render medical care to Plaintiff, and there is nothing in the [complaint] or accompanying exhibits to plausibly suggest that [she] prevented Plaintiff from obtaining access to the prison's medical providers." *Horsh v. Clark*, 2019 WL 1243009, at *6 (W.D. Pa. Mar. 18, 2019), *reconsideration granted on other grounds*, 2020 WL 1275683 (W.D. Pa. Mar. 17, 2020).  Similarly, Trainor alleges no facts to support that CHCA Smith interfered in his medical treatment.  At most, she conveyed information from staff in the Medical Department that Trainor did not like: staff would not move his time for the medication line so he could have his preferred time in the gym [ECF No. 1, ¶¶ 37–43; ECF No. 1-7]; he had to abide by gym rules or forgo attendance; he was not on a formal physical therapy program; despite Trainor's belief—Zappa was not a doctor nor was he able to prescribe a physical therapy program [ECF No. 1, ¶¶ 51-52; ECF No. 1-9]; his "complaints" about pain in his back, legs, and neck on May 18, 2019, were "frivolous" [ECF No. 1, ¶¶ 74–78]; and

informing him in response to his requests for a walker on July 1, 2019, that he is "not on a therapy regimen or program."  ECF No. 1, ¶ 82.  CHCA Smith "cannot be liable simply for failing to second-guess the medical judgment of Plaintiff's health care providers or for failing to dictate an alternative course of treatment." *McGinnis v. Hammer*, 2017 WL 4286420, at *12 (W.D. Pa. July 28, 2017) (dismissing claim against a CHCA) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993)).  *See also Ascenzi v. Diaz*, 2007 WL 1031516, at *5 (M.D. Pa. Mar. 30, 2007) (holding that prison's health care administrator lacked any medical authority to dictate the course of inmate's treatment and could not be considered deliberately indifferent for failing to second-guess the treating physician's assessment of the inmate's medical needs).  Other than this, CHCA Smith replied to Trainor's grievances, which as already discussed, cannot support § 1983 liability.  Based on the foregoing, the claims against CHCA Smith will be dismissed with prejudice.

Regarding Prinkney, although the Complaint names him as a Defendant, it includes no factual allegations against him.  Accordingly, the claims against Prinkney will be dismissed with prejudice.

Regarding Ferdarko and Best, although the Complaint alleges that each had some involvement in actions relating to Trainor's medical care or gym access, the conduct alleged falls short of an Eighth Amendment violation.  The Corrections Defendants correctly argue that the allegations against Ferdarko or Best do not support an inference that the conduct of either caused Trainor to sustain a constitutional injury.   ECF No. 26, p. 9.   The Complaint does not allege that Ferdarko participated in the decision to deny Trainor a double mattress.  In many instances, like CHCA Smith, Ferdarko was merely repeating the medical conclusion of others when, for instance, she conveyed that Trainor was not disabled on August 7, 2019, in response to a request that he not be held in the RHU because of his disability.  *See Kloss v. SCI-Albion*, 2018 WL 4609144, at *4 (W.D.

Pa. Aug. 15, 2018) (allegation that supervisory defendant was "made aware of several issues of the plaintiff's and…failed to help him" is insufficient to state a claim for relief).  Although named in Trainor's allegations regarding prison staff taking away his walker or wheelchair in December of 2018, any link between Ferdarko and this decision is speculative.  Trainor alleges that prison staff took away his walker or wheelchair after Ferdarko apparently viewed video of Trainor exercising and commented that he was using 400 lbs on the leg press.  ECF No. 1, ¶¶ 65–67; ECF Nos. 1-13, 1-14.  Other than providing this information to an unnamed staff member, Trainor provides no allegation that Ferdarko was responsible for him having a walker, that Ferdarko made the decision to remove his walker, that Ferdarko executed the decision but should have used her own medical judgment to allow him to continue having the walker, or that Trainor suffered an injury as a direct result of this action or inaction by Ferdarko.  This claim against Ferdarko will be dismissed without prejudice as an amendment providing further factual allegations may not be futile.

Similarly, the allegations against Unit Manager Best do not support an Eighth Amendment claim.  Best is not a member of the medical staff, and the Complaint does not allege that he had any responsibility for Trainor's medical care.  Best is alleged only to have advised Trainor that he had no record of the Medical Department authorizing a double mattress for Trainor or designating him as "disabled" for purposes of priority use of a handicapped shower stall.  ECF No. 1, ¶¶ 58-59.  Because the Complaint does not allege facts to support that Best had reason to believe that medical personnel were mistreating Trainor in connection with their assessment of whether he needed a double mattress or qualified for priority use of a handicapped shower stall, it fails to state an Eighth Amendment claim against Best relative to these actions.  *Wareham v. Pa. Dep't of Corr.*, 2014 WL 3529996, at *8 (W.D. Pa. July 15, 2014) (a nonmedical staff member's refusal to provide a double mattress does not support an Eighth Amendment claim where treating medical personnel had not authorized one); *Henderson v. Bussanich*, 2007 WL 707036, at *2 (M.D. Pa. Mar. 2, 2007) (same).

Moreover, restrictions on bedding items, such as sheets, pillows, blankets, and mattresses, do not ordinarily "rise to the level of a deprivation of basic human needs, such as food, clothing, and shelter." *Brooks v. Bledsoe*, 682 Fed. Appx. 164, 170 (3d Cir. 2017). Accordingly, the Eighth Amendment claim against Best will be dismissed with prejudice.

### C.   Negligence

The Corrections Defendants request dismissal of Trainor's medical negligence claim against them on the grounds that the Complaint fails to allege facts to support the elements of the claim.[6] ECF No. 26, p. 10. They also argue that "none of the Corrections Defendants named herein were performing in a medical or professional capacity with respect to Plaintiff." *Id.*, pp. 10-11.

To support a prima facie case of medical malpractice under Pennsylvania law, "the plaintiff must establish (1) a duty owed by the physician to the patient, (2) a breach of duty from the physician to the patient, (3) that the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient, and (4) damages suffered by the patient that were a direct result of that harm." *Mitzelfelt v. Kamrin*, 526 Pa. 54, 62, 584 A.2d 888, 891 (1990) (citing *Morena v. South Hills Health System*, 501 Pa. 634, 462 A.2d 680 (1983); Prosser, Law of Torts, Section 30 at 143 (4th ed. 1971)); *Bishop v. Wexford Health Sources, Inc.*, 2019 WL 6311491, at *5 (W.D. Pa. Nov. 25, 2019).

As discussed above, Trainor's Complaint does not include any allegations against RNS Prinkey. Therefore, the negligence claim must be dismissed against him with prejudice. Regarding the other Corrections Defendants, Trainor apparently relies on the same conduct to support his

---

[6] The Court exercises supplemental jurisdiction over Trainor's state law medical malpractice claim because it is so related to his Eighth Amendment claims as to form the same case and controversy. 28 U.S.C. § 1367(a). At this stage, the Corrections Defendants declined to move to dismiss several of Trainor's Eighth Amendment claims, and the Medical Defendants filed an answer to the Complaint.

medical negligence claim as he asserted to support his Eighth Amendment deliberate indifference claim.  As discussed above, Trainor has not alleged facts to support an inference that either Smith or Ferdarko was involved in his medical treatment in a manner that caused him injury.  *See Wooding v. United States*, 2007 WL 951494, at *5 (W.D. Pa. 2007) ("Not only does the plaintiff have the burden of proving that the defendant did not possess and employ the required skill and knowledge, or did not exercise the care and judgment of a reasonable professional, he or she must also provide that the injury was caused by the failure to employ that requisite skill and knowledge.").  Trainor's allegations against the four other Corrections Defendants suffer from the same pleading deficiency.

Trainor alleges he sustained several injuries while incarcerated at SCI-Forest, including a fall in late October of 2017 when he did not have his walker; pain in his neck, back, and legs due to not having a double mattress; severe leg and lower back pain and spasms on and after May 18, 2019; loss of weight and muscle mass in 2019; difficulty and pain when walking; falling and breaking his left foot on August 14, 2019, along with pain due to delayed treatment; and falling and breaking his right foot on October 31, 2019, along with pain due to delayed treatment.  However, the allegations of the Complaint do not support a plausible, nonspeculative inference that the conduct of any of the Corrections Defendants fell below a standard of reasonable care.  The Complaint supports, at best, their peripheral involvement in carrying out the directions of medical personnel.[7]  The causal links

---

[7] The Corrections Defendants also argue that Trainor's medical negligence claim should be dismissed for his failure to file a Certificate of Merit (COM) under Pennsylvania Rule of Civil Procedure 1042.3. ECF No. 26, p. 12.  The docket shows, however, that Trainor has filed a COM asserting that expert testimony is unnecessary for the prosecution of his claim against each of the Corrections Defendants. ECF No. 5.  This filing satisfies the requirements of Rule 1042.3. *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011).  Although not expressly raised by the Corrections Defendants, they may argue that this filing commits Trainor to prosecute his claim against each Defendant without expert testimony in a case where such testimony is necessary to make out a prima facie case of medical malpractice.  *See id.* ("the consequence of such a filing is a prohibition against offering expert testimony later in the litigation, absent 'exceptional circumstances.'").  However, an asserted inadequacy of a COM to support a prima facia case should be assessed under Rule 56's summary judgment standard, not Rule 12(b)(6)'s dismissal standard.  *See id* at 263 (noting that the COM "does not have any 'effect on what is included in the pleadings of a case or the specificity thereof'")(citation omitted); *Schmigel v. Uchal*, 800 F.3d 113, 122 (3d Cir. 2015) ("the COM requirement and its conditions are facts that can form the basis for a motion for summary judgment") (citation omitted).

between alleged conduct and Trainor's injuries are also factually unsupported throughout his Complaint. *See Iqbal*, 556 U.S. at 678 (A court is "not bound to accept as true a legal conclusion couched as a factual allegation."). For these reasons, the Complaint fails to state a medical negligence claim against any of the Corrections Defendants. Because it is not certain that amendment would be futile as to this claim against Ferdarko, Rogers, and Hartzell, dismissal of this claim will be without prejudice as to these three Corrections Defendants. However, no plausible basis exists for a medical negligence claim against CHCA Smith, Unit Manager Best, and the Director of the Activities Department—C. Hays. Accordingly, the Trainor's medical negligence claim against these three will be dismissed with prejudice.

### D. Emotional Distress

The Corrections Defendants move to dismiss Count III in which Trainor asserts state law claims for intentional infliction of emotional distress (IIED) and negligent infliction of emotional distress (NIED) against each Defendant. ECF No. 1, ¶ 123. As support, the Complaint alleges that Trainor "was subjected to constant ridicule and derision in response to complaints of pain and his inability or struggle to walk," but it does not specify which Defendants engaged in this conduct. *Id.*, ¶ 113. The Corrections Defendants assert sovereign immunity as a defense; they also argue Trainor has failed to plead facts to support IIED's and NIED's substantive elements. Count III is subject to dismissal with prejudice on both grounds.

Sovereign immunity under Pennsylvania law provides state officials and employees with broad immunity from most state-law tort claims when "acting within the scope of their duties…except as the General Assembly shall specifically waive the immunity." 1 Pa. C.S. § 2310. Sovereign immunity "applies to Commonwealth employees in both their official and individual capacities, so long as the employees are 'acting within the scope of their duties.'" *Sears v. McCoy*,

2021 WL 254067, at *7 (M.D. Pa. Jan. 26, 2021).  In addition, "sovereign immunity applies even to intentional torts committed by Commonwealth defendants acting in their individual capacities." *Id.* (citing *Story v. Mechling*, 412 F. Supp. 2d 509, 518 (W.D. Pa. 2006), *aff'd*, 214 Fed. Appx. 161 (3d Cir. 2007)).  *See also Mitchell v. Luckenbill*, 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010) ("Unlike employees of municipal agencies who remain liable for intentional torts, employees of Commonwealth agencies are immune from liability even for intentional torts.").  The Pennsylvania General Assembly has waived immunity for nine categories of claims, none of which encompass Trainor's IIED or NIED claims.[8]  Thus, so long as the Corrections Defendants were acting within the scope of their employment at the time of their challenged conduct, each will be immune from liability on Trainor's IIED and NIED claims.

Whether the Defendants in this case acted within the scope of their employment is determined according to Pennsylvania law.  *See Chin v. Chrysler LLC*, 538 F.3d 272, 278 (3d Cir. 2008).  On this issue, Pennsylvania follows the Restatement (Second) of Agency §§ 228–235 (Restatement) (1958).   *Justice v. Lombardo*, 208 A.3d 1057, 1066-67 (Pa. 2019).  Section 228 of the Restatement provides:

> (1) Conduct of [an employee] is within the scope of employment if, but only if:
>
> (a) it is of the kind he is employed to perform;
>
> (b) it occurs substantially within the authorized time and space limits;
>
> (c) it is actuated, at least in part, by a purpose to serve the [employer], and
>
> (d) if force is intentionally used by the [employee] against another, the use of force is not unexpectable by the [employer].

---

[8] Sovereign immunity has been waived for cases involving damages caused by: 1) vehicle liability; 2) medical-professional liability; 3) care, custody, or control of personal property; 4) Commonwealth real estate, highways and sidewalks; 5) potholes and other dangerous conditions; 6) care, custody or control of animals; 7) liquor store sales; 8) National Guard activities; and 9) toxoids and vaccines.  42 Pa. Const. Stat. Ann. § 8522.

Restatement (Second) of Agency § 228(1) (1958).  "On the other hand, an employee's conduct 'is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.'"  *Justice*, 208 A.3d at 1067 (citing Restatement (Second) of Agency 228(2)).

Where more than one inference may be drawn from the facts, the issue of whether an employee was acting within the scope of employment is for the jury.  *Justice*, 208 A.3d at 1068 (citing *Iandiorio v. Kriss & Senko Enterprises, Inc.*, 512 Pa. 392, 517 A.2d 530, 534 (1986)).  In this case, however, Trainor's allegations place each Corrections Defendant's conduct squarely within the scope of his or her employment.  Because the facts alleged in the complaint are accepted as true and, thus, not in dispute when reviewing a motion to dismiss, the Court may decide this question as a matter of law.  *See Justice*, 208 A.3d at 1068 (citing *Orr v. William J. Burns Intern. Detective Agency*, 337 Pa. 587, 12 A.2d 25, 27 (1940)).

Trainor has not alleged that any Defendant acted outside the scope of his or her employment.  All alleged acts took place at SCI-Forest—the Corrections Defendants' place of employment—during working hours.  Where "the servant…does the kind of act which he is authorized to perform within working hours and at an authorized place, there is an inference that he is acting within the scope of employment."  Restatement (Second) of Agency § 235 (1958) cmt. a. They undertook acts serving their employer: responding to request slips and inmate concerns, investigating and issuing decisions on grievances, applying rules regarding access to the gym and the medication line, informing Trainor of decisions of other DOC employees, communicating information from the Medical Department, and addressing matters relating to medical care and issuance materials such as a double mattress or walker.  All these duties serve the purposes of the Correction Defendants employer and fall within their scope of employment.  Accordingly, sovereign

immunity under Pennsylvania law shields the Corrections Defendants from Trainor's IIED and NIED claims.

Furthermore, even if certain of the alleged actions of any Corrections Defendant occurred outside the scope of his or employment and thus outside the protections of sovereign immunity, Trainor's factual allegations fail to state a claim for IIED or NIED.  For an IIED claim, a plaintiff must allege facts to show the following: (1) the defendant's conduct was extreme and outrageous; (2) his conduct caused the plaintiff severe emotional distress; and (3) he acted intending to cause that person such distress or with knowledge that such distress was substantially certain to occur.[9]  *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 217-18 (3d Cir. 2001) (citing Restatement (Second) of Torts § 46 (1965)).  *See also Robinson v. Nat'l R.R. Passenger Corp.*, 821 Fed. Appx. 97, 102 (3d Cir 2020).  Trainor faces a high bar to support the "extreme and outrageous" conduct element of the claim.  Indeed, liability on an IIED claim "has been found only where the [defendant's] conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Field v. Phila. Elec. Co.*, 388 Pa. Super. 400, 565 A.2d 1170, 1184 (Pa. Super. Ct. 1989).  "It is the court's responsibility to determine if the conduct alleged in a cause of action reaches the requisite level of outrageousness."  *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1487 (3d Cir. 1990).

Even accepting an inference that the Defendants' decisions and actions concerning Trainor's medical care, gym access, and equipment access were incorrect or wrongful, Trainor's allegations do

---

[9] Although the Pennsylvania Supreme Court has never explicitly recognized the tort of intentional infliction of emotional distress (IIED) under Pennsylvania law, it has cited Section 46 of the Restatement (Second) of Torts "as setting forth the minimum elements necessary to sustain such a cause of action."  *Taylor v. Albert Einstein Med. Ctr.*, 562 Pa. 176, 754 A.2d 650, 652 (Pa. 2000) (citations omitted).  Based on this precedent, the United States Court of Appeals for the Third Circuit has predicted that the Pennsylvania Supreme Court would adopt IIED as a cause of action as set forth in Section 46.  *Williams v. Guzzardi*, 875 F.2d 46, 50–51 (3d Cir. 1989) (discussing *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979) (en banc)).

not support the level of extreme and outrageous conduct required for this tort. *See Hoy v. Angelone*, 554 Pa. 134, 720 A.2d 745, 753 (Pa. 1998) (collecting cases); *Wilkinson v. Downston*, 2 Q.B.D. 57 (1897) (defendant falsely told the plaintiff that her husband had been severely injured in an accident; first example cited to illustrate extreme and outrageous conducted under Section 46 of the Restatement). *See also Baumgardner v. Ebbert*, 2013 WL 1249040, at *16-17 (Mar. 26, 2013) (dismissing IIED and NIED claim based on prisoner's disagreement with provided medical treatment), *aff'd*, 535 Fed. Appx. 72, 77 n. 7 (3d Cir. 2013) (summarily affirming dismissal of IIED and NIED claims). His unadorned allegations that he experienced "constant ridicule and derision" are also not extreme or outrageous because "liability…does not extend to mere insults, threats, annoyances, petty oppressions, or other trivialities." *Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 527 A.2d 988, 991 (1987) (quoting Restatement (Second) of Torts § 46 cmt. d). *See, e.g., Thompson v. AT&T Corp.*, 371 F.Supp.2d 661, 686–87 (W.D. Pa. 2005) (dismissing IIED claim in which plaintiff was ridiculed and sworn at). *See also Potter v. Deputy Attorney Generals*, 304 Fed. Appx. 24, 27 (3d Cir. 2008) (affirming dismissal of claim that officer mocked inmate experiencing an eye infection because verbal taunting alone by a prison official is insufficient to establish a Constitutional violation). Therefore, Trainor's IIED claim will be dismissed with prejudice.[10]

Trainor's claim of negligent infliction of emotional distress is also insufficient. To state a claim for NIED, a plaintiff must establish the elements of a negligence claim within at least one of the four following scenarios: "(1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff

---

[10] Dismissal on this basis makes it unnecessary to reach Defendants' other arguments for dismissal of the IIED claims. *See* ECF No. 26, pp. 14-15.

observed a tortious injury to a close relative." *Toney v. Chester County Hosp.*, 961 A.2d 192, 197–98 (Pa. Super. Ct. 2008) (citing *Doe v. Philadelphia Cmty. Health Alternatives AIDS Task Force*, 745 A.2d 25, 26 (Pa. Super. Ct. 2000), *aff'd*, 564 Pa. 264, 767 A.2d 548 (Pa. 2001)).  The facts alleged in the Complaint do not support any of these scenarios.  Trainor's NIED claim also will be dismissed with prejudice.

  E.   Leave to Amend

  The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).  The Court should not allow amendment if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim.  *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002).  This instruction is equally applicable to *pro se* litigants and those represented by counsel.  *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).  Trainor may file an amended complaint but not as to claims which were dismissed with prejudice.

  The Court reminds Trainor that an amended complaint "must be complete in all respects.  It is a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Williams v. Ferdarko*, 2018 WL 3653272, at *1 n. 1 (W.D. Pa. Aug. 1, 2018) (quoting *Young v. Keohane*, 809 F. Supp. 1185, 1189 (M.D. Pa. 1992)).  This means that even though the Defendants did not attempt to dismiss all of Trainor's claims and not all claims were addressed in this Opinion, his Amended Complaint must restate all allegations he plans on pursuing.  In his Amended Complaint, Trainor should (1) differentiate his claims among the defendant or defendants he is suing, (2) provide a short and plain statement of the facts in accordance with Rule 8 of the Federal Rules of Civil Procedure, (3) identify what each defendant did or did not do, when, for how

long, and if the violations of rights are ongoing, (4) and what relief he is seeking. Because Trainor

generally lumped his multiple claims against all Defendants together, the Court invokes Rule 10 for

Trainor to follow, which prescribes that "[a] party must state its claims or defenses in numbered

paragraphs, each limited as far as practicable to a single set of circumstances;" because it "would

promote clarity, each claim founded on a separate transaction or occurrence…must be stated in a

separate count or defense." Fed. R Civ. P. 10(b).

V.      Conclusion

The Corrections Defendants' partial motion to dismiss (ECF No. 25) is GRANTED IN

PART and DENIED IN PART, as follows:

1.   All claims against Chief Healthcare Administrator Kim Smith are dismissed with
     prejudice, and the Clerk of the Court is directed to terminate Smith as a Defendant
     in this action;

2.   All claims against Registered Nurse Supervisor Gary Prinkey are dismissed with
     prejudice, and the Clerk of the Court is directed to terminate Prinkey as a Defendant
     in this action;

3.   All claims against Unit Manager Best are dismissed with prejudice, and the Clerk of
     Court is directed to terminated Best as a Defendant in this action;

4.   Trainor's Eighth Amendment claim (Count I) against Registered Nurse Supervisor
     Jamie Ferdarko pursuant to § 1983 is dismissed without prejudice, and Trainor is
     granted leave to file an amended complaint as to this claim;

5.   Trainor's state law medical negligence claim (Count II) against Ferdarko, Rogers, and
     Hartzell is dismissed without prejudice, and Trainor is granted leave to file an
     amended complaint as to this claim against these three Corrections Defendants;

6.  Trainor's state law medical negligence claim (Count II) against C. Hays—the Director of the Activities Department, is dismissed with prejudice;

7.  Trainor's intentional and negligent infliction of emotional distress claims (Count III) are dismissed with prejudice as to all Corrections Defendants;

8.  In all other respects, the motion is DENIED.

Trainor shall have twenty-one days from the date of this order to file an amended complaint as specified in the Court's Memorandum Opinion.  *See* ECF No. 34.  Trainor's failure to file an amended complaint within this period may result in dismissal of this action for failure to prosecute.

Dated: September 1, 2021

RICHARD A. LANZILLO
United States Magistrate Judge